OPINION *Page 2 
{¶ 1} Plaintiffs-appellants Karen and Harvey Steigerwald appeal the decision of the Jefferson County Common Pleas Court which granted summary judgment in favor of defendants-appellees the Jefferson County Engineer and the three Jefferson County Commissioners. The main issues on appeal concern whether there are genuine issues of material fact as to appellants' claim that the Engineer's Office granted them permission to construct a fence near the roadway or as to their claim that the fence and trees did not constitute an obstruction as used in the relevant statute. Appellants also contend that the Commissioners violated their due process rights and improperly enforced a resolution before an alleged thirty-day effective date. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} On July 28, 2005, the Jefferson County Sheriff's Office received complaints about a yellow tailgate blocking part of County Road 42 in Toronto, Ohio. Appellants placed the object in the road as a warning to motorists to use caution because they were digging postholes near the road. To avoid the tailgate, motorists had to enter an oncoming lane of traffic, which approached them around a blind curve.
 {¶ 3} After instructing Harvey Steigerwald to remove the tailgate from the roadway, the responding deputy noticed that steel fence posts for a six foot tall fence were going to be erected a mere two feet from the road. The deputy advised Mr. Steigerwald that he could not install a fence that close to the road due to a right of way. He ordered Mr. Steigerwald to stop building the fence until he received a permit and noted that the fence could be torn down if he proceeded.
 {¶ 4} Later that day, Karen Steigerwald called the County Engineer's Office to inquire about whether a permit was required as is evidenced by a written telephone message left for employee Clay Merrin. Mr. Merrin's affidavit stated that he called Mrs. Steigerwald back twice and left messages but did not receive responses. He also stated that he was too busy with a paving job to get to the Steigerwald's property until September. *Page 3 
 {¶ 5} Mrs. Steigerwald's deposition alleges that she spoke to the woman who answered the telephone at the Engineer's Office and generally asked about placing a fence along the road and expressed concern about interfering with utilities. Mrs. Steigerwald did not provide specifics, and there is no indication that she mentioned the right of way referred to by the deputy. (K.S. Depo. at 7). The woman from the Engineer's Office allegedly said that a permit was not needed unless utilities were involved, but she also stated that they would send someone out to determine the necessity of a permit or the propriety of the fence. (Id. at 7, 14).
 {¶ 6} Mrs. Steigerwald testified at deposition that she understood that the inspection was scheduled for that weekend, but no one appeared. She believed she called the Engineer's Office back on Monday and again four days later. (Id. at 8, 15). However, other filings by the Steigerwalds state that Mrs. Steigerwald only called twice and after the second call, she received a call back setting a date for inspection. (See March 16, 2007 Brief in Opp.; May 4, 2007 Reply).
 {¶ 7} The Steigerwalds then assumed that someone viewed the property in their absence and/or assumed that they would have been contacted if they could not continue constructing the fence. They also expressed disbelief that the deputy was an authority on the topic of their fence.
 {¶ 8} When Mr. Merrin appeared at their property in September, the portion of the fence along the road (spanning eighty-eight feet) was complete or nearly so. Mr. Merrin advised Mr. Steigerwald that the fence would have to be moved back and noted that he failed to get a permit for erecting it in the right of way. They had a disagreement as to whether Mrs. Steigerwald called the office and was told that a permit was not necessary. Mr. Steigerwald asked if Mr. Merrin was calling his wife a liar and then asked how he would like it if he called Mr. Merrin's wife a whore. Mr. Steigerwald believes that his heated statement resulted in a revenge mentality on the part of the Engineer's Office.
 {¶ 9} Besides erecting a fence, the Steigerwalds also planted trees next to the road within the right of way. In addition, Mr. Steigerwald disclosed that he dug away part of the hillside that supports the road in order to level his lot prior to building the fence. *Page 4 
 {¶ 10} On October 17, 2005, County Engineer James Branagan sent a letter to the Steigerwalds stating that their fence was located in the right of way of County Road 42. He opined that the fence was a serious safety hazard. He then instructed that the fence had to be removed by November 1, 2005, after which time he would turn the matter over to the Prosecutor's Office. The Steigerwalds did not move the fence.
 {¶ 11} On March 9, 2006, the Board of County Commissioners passed Resolution 2006-11. In this resolution, the Board explained that County Road 42, along with a sixty foot right of way, was dedicated under a February 1839 Road Deed. The Board found that the Steigerwalds constructed a fence and planted trees along County Road 42 without obtaining the approval of the Board as required by R.C. 5547.04. The Board disclosed that the County Engineer deemed the fence and trees to be an impediment to the maintenance of the highway and a safety hazard to the public. The Board noted that the Engineer requested removal of the obstructions to no avail.
 {¶ 12} The Board then resolved, in accordance with R.C. 5547.03 and5547.04, that the landowners would be directed to begin removing the trees and fence within five days of receipt of the notification and to complete the removal within a reasonable time. Upon the landowners' failure to comply, the Board advised that it would employ the necessary labor to remove the fence and trees and certify the amount to the County Auditor to be collected as other taxes on the property.
 {¶ 13} The Steigerwalds received the notice by certified mail no later than March 21, 2006 but did not begin the removal process within the time allotted. The county waited another five days due to a request from an attorney the Steigerwalds were considering hiring. Then, on March 31, 2006, the county acted to remove the fence and trees. Thereafter, they placed a special assessment on the property in the amount of $1,296.79, which the Steigerwalds have paid.
 {¶ 14} On April 7, 2006, the Steigerwalds filed a pro se complaint against appellees seeking damages for the cost to replace the fence and trees. They alleged that they constructed the fence in reliance on the advice and inaction of the Engineer's Office and that the obstruction referred to in the relevant statute requires actual interference with the road. They also complained that the Commissioners failed to *Page 5 
provide notice of the hearing on the resolution, enforced the resolution before thirty days had passed, removed their property knowing that they wished to try the matter in a court of law, and never removed any neighboring landowner's violative property from the right of way.
 {¶ 15} On March 5, 2007, appellees filed a motion for summary judgment. They attached affidavits provided by the deputy, Mr. Merrin and the County Engineer. The deputy and Mr. Merrin recited their respective conversations with Mr. Steigerwald. Mr. Merrin also reported that no other fences are as close to the road as the one at issue and that any other fences were lower and more open.
 {¶ 16} The Engineer's affidavit disclosed that County Road 42 has a sixty foot right of way. He noted receiving calls from the public voicing safety concerns about the fence, such as from a neighbor, who had to blindly exit his drive. The Engineer also pointed to problems with snow removal and the reduction of much-needed shoulder width at the site of this dangerous curve and ravine.
 {¶ 17} Appellees' motion pointed out that: the Sheriff advised the Steigerwalds of their violation and the reason therefore prior to completion of even the posts; the person who answered the telephone at the Engineer's Office had no firsthand knowledge of the project; and, Mrs. Steigerwald admitted in deposition that she did not provide specifics to that person. They also pointed out that Mrs. Steigerwald originally stopped construction to await a visit from someone with knowledge from the Engineer's Office.
 {¶ 18} Appellees cited to the pertinent section of the Ohio Revised Code concerning the Board's duties with regard to obstructions in the right of way to a public highway. They urged that the "obstruction" referred to in the relevant statute is not limited to a sight obstruction but includes any obstacle or barrier.
 {¶ 19} The Steigerwalds responded by admitting that police had been telling them for years that they parked their cars too close to the road. They also admitted the content of the conversation with the deputy. At a hearing, they admitted that the fence and trees were in the right of way of the road. They urged, however, that they should be permitted to rely on the clerk's statement regarding the lack of need for a fence permit as the equivalent of them receiving a permit for their fence. They also *Page 6 
disputed that Mr. Merrin left them any messages. Apparently to support their implied claim of reasonable reliance on the statement from the clerk at the Engineer's Office, they noted that they had also called the city of Steubenville's permit department where they were informed that the county did not have a building inspector or issue permits.
 {¶ 20} Furthermore, the Steigerwalds reiterated their claims that: the resolution was enforced prior to its alleged effective date; the fence and trees were not obstructions under the relevant statutes; and, the right of way is unevenly enforced. Finally, they complained that the road record evidencing the right of way was difficult to read.
 {¶ 21} On May 14, 2007, the trial court granted summary judgment in favor of appellees. The court noted the admission that the trees and fence were in the road's right of way. The court pointed out that the county warned the Steigerwalds, prior to constructing the fence and planting the trees, that they could not build there. The court continued that the Steigerwalds were notified to remove the fence and trees but refused, thus allowing appellees to remove them under R.C. 5507.03 and5507.04 (with a typographical error citing to 5507.43, a non-existent statute). The Steigerwalds filed timely notice of appeal.
 LAW {¶ 22} Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The court must determine whether reasonable minds can only come to a conclusion in favor of the movant on the aforementioned evidence after construing the evidence in the light most favorable to the non-movant. Civ.R. 56(C).
 {¶ 23} Thus, the factual evidence used in determining whether a statute is violated can be construed in favor of the non-movant; however, contrary to appellants' suggestion, there is no such construal requirement in deciding pure legal matters such as statutory interpretation. We review legal questions and the propriety of granting summary judgment de novo. See Comer v. Risko, 106 Ohio St.3d 185,2005-Ohio-4559, ¶ 8. *Page 7 
 {¶ 24} As for the substantive statute to be interpreted, R.C. 5547.04
provides:
 {¶ 25} "[A] The owner or occupant of lands situated along the highwaysshall remove all obstructions within the bounds of the highways, whichhave been placed there by them or their agents, or with theirconsent.
 {¶ 26} "[B] By first obtaining the consent and approval of the board of county commissioners, obstructions erected prior to July 16, 1925 in highways other than roads and highways on the state highway system or bridges or culverts thereon, may be permitted to remain, upon such conditions as the officials may impose, provided such obstructions do not interfere with traffic or with the construction or repair of such highways.
 {¶ 27} "[C] No person, partnership, or corporation shall erect, withinthe bounds of any highway or on the bridges or culverts thereon, anyobstruction without first obtaining the approval of the board in case of highways other than roads and highways on the state highway system and the bridges and culverts thereon.
 {¶ 28} "[D] All advertising or other signs and posters erected, displayed, or maintained on, along, or near any public highway, and in such a location as to obstruct, at curves or intersecting roads, the view of drivers using such highway, are obstructions * * *
 {¶ 29} "[E] The board shall enforce this section and, in so doing, mayavail itself of section 5547.03 of the Revised Code." (Emphasis added to applicable portions, and section letters added for clarity of reference).
 {¶ 30} We next turn to R.C. 5547.03, the statute referenced above in R.C. 5547.04 [E] as the Board's enforcement mechanism. Initially, R.C.5547.03 deals with those using or occupying any part of a highway with telephone lines, railways and oil, gas or water pipes, mains, conduits or other objects or structures. The statute allows the Board of County Commissioners to opine that such objects constitute obstructions in any highway or interfere with proposed improvement of such highway or the use thereof by the traveling public. It also allows the board to provide consent and approval to relocate such property within the bounds of the highway in the manner the board prescribes. It then provides the following enforcement procedure, as referred to in R.C. 5447.04: *Page 8 
 {¶ 31} "If, in the opinion of the engineer, such persons, partnerships, or companies have obstructed any such highway, bridges, or culverts, or if any of their properties are, in his opinion, so located that they do or may interfere with the proposed improvement, maintenance, or repair the board shall notify such person, partnership, or corporation directing the removal or relocation of the obstruction or property, and, if they do not within five days proceed to so remove or relocate and complete the removal or relocation within a reasonable time, the board may do so by employing the necessary labor. The expense incurred shall be paid in the first instance out of any moneys available for highway purposes, and not encumbered for any other purpose, and the amount shall be certified to the proper officials to be placed on the tax duplicate against the property of such person, partnership, or corporation, to be collected as other taxes and in one payment, and the proper fund shall be reimbursed out of the money so collected, or the account thereof may be collected from such person, partnership, or corporation by civil action by the state on the relation of the board." R.C. 5547.03.
 {¶ 32} As an aside, appellees point out that it is a criminal offense to dig up, remove or excavate any portion of any public highway or build a fence upon same without authority to do so. R.C. 5589.10 (defining this crime). See, also, R.C. 5589.99(C) (labeling this offense a fourth degree misdemeanor).
 {¶ 33} Before turning to the assignments of error, we note that appellants' brief is somewhat disorganized, a bit repetitive and at times overlapping. Thus, we may have moved some of the arguments into certain assignments of error in order to provide structure.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 34} Appellants' first assignment of error provides:
 {¶ 35} "THE COURT ERRED IN GRANTING THE MOTION [FOR] SUMMARY JUDGMENT TO THE DEFENDANTS AT THE DISMISSAL OF THE PLAINTIFF-APPELLANTS' COMPLAINT * * *."
 {¶ 36} We shall address here appellants' contention that there is a genuine issue of material fact as to whether the fence and trees constituted obstructions. They *Page 9 
contend that their pictures established that the fence and trees did not obstruct visibility to the traveling public.
 {¶ 37} As to the use of the word obstruction in R.C. 5547.04, we first note that it has been conceded that the fence and trees are within the road's right of way and thus within the bounds of the highway at issue. (See Apr. 30, 2007 Hrg. at 8). Obstruction must be given its plain and ordinary meaning absent a contrary legislative intent. Coventry Towers,Inc. v. Strongsville (1985), 18 Ohio St.3d 120, 122. Where the language of a statute is clear and unambiguous, the court must enforce the statute as written, making neither additions to nor subtractions from the language utilized. Bemardini v. Conneaut Area City Sch. Dist. Bd. ofEdn. (1979), 58 Ohio St.2d 1, 4. Appellees cite Black's Law Dictionary to provide the definition of obstruction as a hindrance, obstacle, barrier or an object that delays, impedes or hinders.
 {¶ 38} Appellants do not actually challenge such definition but misconstrue the statute as only prohibiting objects that obstruct the ability of motorists to safely travel on the road. However, as appellees urge, the object must merely exist as an obstacle in the right of way. The relevant portions of R.C. 5547.04, being sections [A] and [C], make no mention of obstructing traffic. Rather, the bare term obstruction is used. Thus, if the highway, including its right of way, is hindered or occupied by an obstacle, then R.C. 5547.04 applies. In its plain and ordinary sense, the statute would include a fence and trees as being obstructions as they are obstacles and barriers existing within the undisputed right of way.
 {¶ 39} In reviewing the statute in its entirety, the intended use of the term obstruction becomes even clearer. That is, in addressing an obstruction erected before July 16, 1925, section [B] states that the landowner can receive the consent and approval of the Board of County Commissioners for the obstruction to remain upon conditions the Board imposes if the obstructions do not interfere with traffic or with the construction or repair of the road. R.C. 5547.04 [B]. If obstruction as generally used in R.C. 5547.04 already meant interfering with traffic as appellants urge, then adding that as an exception in section [B] would be pointless. Thus, the term obstruction as used in R.C. 5547.04 is not limited to objects that interfere with traffic, construction, or repair. *Page 10 
 {¶ 40} In other words, preexisting obstructions have a less stringent test and can remain if they do not interfere with traffic, road repair or construction, whereas later obstructions are not given the benefit of this more lenient test. See R.C. 5547.04 [B]. Those later obstructions cannot be erected without Board approval, and such approval does not depend on interference with road repair or traffic interference. R.C.5547.04 [C]. Thus, there has not been shown to be a genuine issue of material fact as to whether a fence and trees constituted an obstruction under R.C. 5547.04.
 {¶ 41} Finally, resort to R.C. 5547.03 is specifically stated to be only for the procedural purpose of enforcing of the substantive provisions of R.C. 5547.04. As such, the only relevant portions of R.C.5547.03 involve the Board sending notice of the substantive violation to the relevant person directing that the removal or relocation commence within five days and be completed within a reasonable time and advising that the Board will employ the necessary labor if such directions are not followed. Other procedural mechanisms applicable include what fund the Board shall use to pay for necessary labor and how to certify the amount of the expense incurred to the proper official for placement on the tax duplicate against the property in order that it be collected in one payment and used to reimburse the county fund. There is no allegation that the plain language of these statutory procedures was not followed.
 {¶ 42} Even if appellants' definition of obstruction were correct, appellants' neighbor was described as having to blindly pull out of his driveway due to the fence and trees. Appellants appear to allege that this is irrelevant because the neighbor obstructs his own view by parking cars near the road (and obstructs his view to the opposite side by bushes). Yet, this does not negate the proposition that the fence and trees obstructed his view. Appellants have also failed to rebut the County's claim that the solid six foot tall fence located within two feet of a curved roadway (on the downward hillside) impaired the county's snow removal ability.
 {¶ 43} As for appellants' protest that there are houses and other fences within the sixty foot right of way, appellees' state that any neighboring fences are further away from the road and are shorter and more open. Regardless, the fact alleged by appellants does not give appellants a right to ignore a state law, and differing enforcement does not provide a right to sue in the absence of an allegation of an *Page 11 
illegal categorization. Here, the complaint defining the action did not set forth allegations of any unlawful basis for the allegedly different enforcement. See Ryncarz v. Powhatan Point, 7th Dist. No. 04BE33,2005-Ohio-2956, ¶ 51-55. Additionally, appellants' remonstration regarding other landowners is merely set forth on appeal in their statement of the case, and is not actually assigned and argued as required by the Rules of Appellate Procedure. See App.R. 12(A)(2); 16(A). For all of the foregoing reasons, appellants' first assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 44} Appellants' second assignment of error states:
 {¶ 45} "THE COURT ERRED WHEN GRANTING THE DEFENDANTS' MOTION TO DISMISS WHEN PLAINTIFFS WERE GIVEN PERMISSION TO ERECT THEIR FENCE FIRST BY THE JEFFERSON COUNTY ENGINEER'S OFFICE AND THEN BY THE DEFENDANT'S ACTIONS AND INACTIONS."
 {¶ 46} Appellants urge that the statement of the clerk who answered the telephone at the Engineer's Office combined with the Office's subsequent inaction (or late action) should be construed as permission to construct the fence in the chosen location. As appellees point out, Mrs. Steigerwald admitted that she did not give details to the clerk. Similarly, there is no indication that she informed the clerk about the deputy's statement to her husband or that the fence may be in the road's right of way.
 {¶ 47} Appellants admit in two different places that the deputy specifically explained that the issue was one of encroachment on the right of way. (Mar. 16, 2007 Brief in Opp.; Apr. 30, 2007 Hrg. at 14). They also concede that the police have advised them for years about the prohibition on parking cars in this right of way. As such, even if the clerk advised that no permit was needed, this was not justifiably relied upon due to the failure to supply the clerk with the complete and necessary information that was known to appellants at the time.
 {¶ 48} Moreover, according to appellants, the clerk was nevertheless sending a representative to the property to determine the need for a permit and the propriety of the fence's location. Thus, the general statement regarding county permits was clearly *Page 12 
not to be the final word. Thereafter, the slow action of the Engineer's Office in responding does not give rise to the right to violate laws.
 {¶ 49} Prior to even completing the post-hole digging, appellants were advised by a knowledgeable county employee that the fence could not be located in the road's right of way without receiving approval. Contrary to their assumption that the deputy was ignorant on such matters, a relevant criminal law supplemented the civil statutes herein. See R.C.5589.10. They not only built a fence and planted trees two feet from a dangerous curved roadway, they also dug into a hillside that supported this precipitous roadway. See id.
 {¶ 50} In any event, contrary to appellants' assumptions upon which this argument is based, the Engineer's Office does not grant permits to place obstructions in the right of way. Rather, it is the province of the Board of County Commissioners to approve landowners' requests to erect obstructions within the bounds of the highway. R.C. 5547.04.
 {¶ 51} Finally, although appellees do not mention this doctrine, it should be noted that use of the doctrine of detrimental reliance is not generally permissible against government officials in performance of their governmental tasks. Hortman v. Miamisburg, 110 Ohio St.3d 194,2006-Ohio-4251, at ¶ 16 (doctrines of equitable and promissory estoppel do not apply to a political subdivision when it is engaged in a governmental function); State ex rel. Bayus v. Woodland Park Prop., 7th Dist. No. 05MA169, 2007-Ohio-3147, ¶ 17-18 (detrimental reliance cannot be argued against government agency in performing government functions). For all of the foregoing reasons, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 52} Appellants' third assignment of error states:
 {¶ 53} "DEFENDANTS TOOK ACTION ON THEIR RESOLUTION BEFORE THE STATUTORY TIME LIMIT."
 {¶ 54} In support of their contention that the Board should not have acted on its resolution until thirty days had passed, appellants cite a sentence from the Commissioners' Handbook, R.C. 307.37(C)(2) and two cases. The two cases are not on point. One case dealt with a city charter specifically providing that resolutions other *Page 13 
than those listed do not take effect for thirty days after passage.State ex rel. Kuder v. City of Strongsville (Mar. 14, 1996), 8th Dist. No. 69371. The other case dealt with a statute regarding township regulations on parking that must be posted in five conspicuous places for thirty days before becoming effective. Todd v. Finley (Mar. 8, 2002), 4th Dist. No. 01CA18.
 {¶ 55} The only portion of the Commissioners' Handbook cited and provided by appellants states: "The amendment becomes effective in 30 days * * *." However, this section is entitled "Zoning Changes or District Changes" and specifies a procedure required for zoning amendments. The within action did not involve a zoning amendment. As such, the cited section of the Commissioners' Handbook is inapplicable here.
 {¶ 56} The statute appellants cite provides: "Any proposed regulation, code, or amendment shall be made available to the public at the board office. The regulations or amendments shall take effect on the thirty-first day following the date of their adoption." R.C.307.37(C)(2). This has nothing to do with the resolution adopted in this case. The statute must be read in its entirety wherein it expressly deals with the following functions of the board of county commissioners: adopting local residential building regulations governing residential buildings; adopting, administering and enforcing an existing structures code pertaining to the repair and continued maintenance of structures and the premises of those structures; and adopting regulations dealing with floods and drainage. R.C. 307.37(B) (providing the list), (C)(1) (referring to any regulation, code or amendment adopted under thissection). None of the listed functions occurred here.
 {¶ 57} As such, appellants have cited nothing to establish that the Board's resolution could not take effect for thirty days. Furthermore, as appellees point out, more specific statutes, R.C. 5547.03 by way of R.C. 5547.04, provide the violator with only five days to commence removal of the obstruction identified by the Board. See R.C. 1.51
(specific provision prevails over general provision).
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 58} Appellants' fourth assignment of error alleges:
 {¶ 59} "PLAINTIFFS' DUE PROCESS RIGHTS WERE VIOLATED." *Page 14 
 {¶ 60} Appellants complain that they were not provided with notice and an opportunity to be heard before the Board passed the resolution. Again, they cite the portion of the Commissioners' Handbook relating to zoning amendments. As set forth above, this case does not involve a zoning amendment. The statutory procedures set forth in R.C. 5547.03 (as referred to in R.C. 5547.04) do not entail a hearing before the Board's decision on obstruction or before its notification to the property owner.
 {¶ 61} As for any other construction of appellants' due process arguments on appeal, appellants did not seek a declaration below that the statute was unconstitutional due to its failure to require a hearing. Neither their complaint nor their response to summary judgment raises this due process argument. Because appellants improperly raise such claims for the first time on appeal, we shall not delve further into the matter.[1]
 {¶ 62} Appellants also complain here about the lack of a written permit application. However, nothing in the statute requires the county's maintenance of such document or even speaks of an actual, physical permit. Rather, permission, consent or approval of the Board is the requirement here.
 {¶ 63} In conclusion, appellants failed to raise the constitutionality of the statute regarding its lack of a hearing and thus waived the issue for purposes of appeal. Any other matters raised in appellants' brief for the first time on appeal are similarly excluded from our consideration. This would include complaints about the lack of a hearing before the construction of a rock wall, the erection of a guardrail and the calculation of the amount for tax assessment purposes.
 {¶ 64} Finally, any arguments made here that the judgment is not sustained by evidence and is against the manifest weight of the evidence are not the type of *Page 15 
arguments entertained in reviewing a summary judgment decision. We outlined the standard for reviewing such decision above.
 DISCOVERY ARGUMENTS {¶ 65} After receiving the county's answers to interrogatories, appellants filed a motion to compel discovery. A hearing was held thereon, at which the court disposed of certain arguments. The court took the remaining matters under advisement, and appellants then filed an amended motion to compel. This motion was not specifically addressed, but the court granted summary judgment in favor of appellees and thus the motion is taken as denied. Appellants now make various complaints regarding discovery to this court.
 {¶ 66} We can dispose of their arguments regarding their motion to compel by citing to Civ.R. 33(E), which mandates:
 {¶ 67} "Before filing a motion authorized by this rule, the party shall make a reasonable effort to resolve the matter through discussion with the attorney, unrepresented party, or person from whom discovery is sought. The motion shall be accompanied by a statement reciting the efforts made to resolve the matter in accordance with this section."
 {¶ 68} Appellants did not attach to their motion to compel a statement on their efforts made to resolve their discovery complaints nor is there otherwise any indication that they made a reasonable effort to resolve the matter through discussion with the County's attorney. As such, the trial court reasonably denied their motion to compel.
 {¶ 69} Moreover, the discovery complaints made on appeal are either without merit or do not affect the summary judgment rendered. For instance, appellants complain that the Engineer did not answer the interrogatory asking who from his Office had handled the calls from Mrs. Steigerwald. However, this was not a question in the interrogatories. (See February 28, 2007 submissions). Appellants' contemporaneous request for production of documents did ask the Engineer to identify the clerk who answered the call. Apparently, the Engineer provided a list of employees but did not state who answered the call. (See Apr. 16, 2007 Motion to Compel). However, if no document exists on the matter requested in the request for production of documents, then the person responding need not create a document. That is the purpose of *Page 16 
interrogatories, which were not utilized on this question. Additionally, although appellants raised this contention in their initial motion to compel, they later amended their motion (after the hearing on their original motion to compel) and failed to reassert this complaint before the trial court.
 {¶ 70} Appellants also complain that the Engineer failed to explain why the rock wall and guardrail had to be constructed in the same place the fence had been located. This apparently refers to Interrogatory Number 11, which specifically asked why the aforementioned items were placed on their property despite the fact that "this case was under litigation and there was an injunction for there to be no further disruption to the property * * *." Contrary to appellants' suggestion, the court did not grant an injunction and one did not exist by mere fact that they filed a complaint. Thus, the question, which essentially asked who violated an injunction and for what reason, was not valid and need not have been answered. Regardless, the answer to this interrogatory in fact disclosed that the Engineer and a Jeff Oinonen made the decision to erect a rock wall to keep the road from collapsing and a guardrail to protect motorists from crashing off the edge of the roadway. Moreover, the May 4, 2007 amended motion to compel discovery did not contain this complaint, and it was thus waived by omission.
 {¶ 71} This is also the problem with appellants' buried appellate objection that the minutes of the Commissioner's meeting were not provided. That is, the request for production of documents sought any "external or internal memoranda of the meetings" concerning the fence, and the motion to compel changed this to "minutes" of the Commissioner's meeting. However, the amended motion did not raise this issue at all. As such, it was waived for the trial court's consideration at that time, and we could not address it on appeal even if appellants had made and established a reasonable attempt to resolve the issue under Civ.R. 33(E).
 {¶ 72} Appellants also argue that the Engineer should have answered what "existing fence" means. This apparently refers to Interrogatory Number 12, which asked in pertinent part for "the latest date (by year) employed by the County Engineer which allows `existing fence' to remain in the `road right of way'." Appellees objected to this question on the grounds that it was overly broad, vague and ambiguous. The *Page 17 
result of this discovery dispute does not affect the summary judgment rendered herein as contrary to appellants' suggestion, a fence does not attain a pre-existing status merely because it was built before the Engineer's Office had a chance to inspect their property as requested. Additionally, appellants fail to recognize that the trial court was permitted to defer (until as late as the pretrial) the need to answer this question as it concerned an interpretation of a law. See Civ.R. 33(B).
 {¶ 73} Lastly, appellants complain that the attorney rather than the defendants signed the answers to the interrogatories, the questions were not answered under oath and each question should have had four different answers (one from each defendant). They cite to Civ.R. 33(A), which provides:
 {¶ 74} "Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. * * * The answers are to be signed by the person making them, and the objections signed by the attorney making them."
 {¶ 75} First, we note that most of the questions asked were basically general queries about how the trial would be proceeding, such as the names of testifying experts and other witnesses and the subject matter of their testimony. However, not all were so general as some required questioning the individual defendants in order to formulate the answers sought. As such, appellants' complaint about the lack of sworn signatures by appellees is at least partially understandable, as the parties who were approached for specific answers seemingly should have signed their answers under oath. On the other hand, Civ.R. 33(A) allows interrogatory answers of a public association to be provided by an agent. Although the county was not sued as a whole, the defendants here were all sued in their official capacities and were not individual defendants. Inzano v. Johnston (1986), 33 Ohio App.3d 62, 65 (where the Eleventh District held, with emphasis added, that "pursuant to Civ.R. 33(A) an attorney is not permitted to answer interrogatories for anindividual party.").
 {¶ 76} Yet, the attorney here still did not answer under oath. Even if this complaint is meritorious and this problem disallowed appellees' reliance on the answers in their summary judgment motion, appellees did not purport to rely on their answers in seeking summary judgment, the court did not utilize the answers and *Page 18 
appellants did not demonstrate the need for such answers in order to respond to the legal issues raised by appellees. See Allstate Ins. Co.v. Rule (1980), 64 Ohio St.2d 67, 69. Thus, prejudice is not apparent at the summary judgment stage of the case under the circumstances existing herein. In any event, we reiterate that appellants' discovery arguments are without merit as they failed to demonstrate an attempted private resolution with appellees' attorney as required by Civ.R. 33(E) prior to seeking a motion to compel.
 {¶ 77} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs. Waite, J., concurs.
[1] Moreover, if a hearing was required as appellants contend, then the Board's decision would be considered quasi-judicial. See Union TitleCo. v. State Bd. of Edn. (1990), 51 Ohio St.3d 189, 191. In such case, appellants would have been required to utilize the administrative remedy of appealing the Board's decision to the trial court. See R.C. 307.56;2506.01. See, also, Milhoan v. Eastern Loc. Sch. Dist. Bd. of Edn.,157 Ohio App.3d 716, 2004-Ohio-3243, ¶ 13-16; In re Howard (1991),73 Ohio App.3d 717, 719 (the question is whether there is a requirement for notice and hearing, not whether the administrative agency complied with such requirement); Shaner v. Bahns (1956) 141 N.E.2d 303, 74 Ohio Law Abs. 422 (where the county commissioners order a landowner to move a sign because it obstructs the view at an intersection, the landowner may appeal to the common pleas court and hence may not obtain an injunction to restrain the commissioners from moving such sign). *Page 1